UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAFAEL COSME, | : | CIVIL ACTION NO. 3:21-CV-1344 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF HARTFORD, | : | |
| Defendant. | : | OCTOBER 11, 2021 |

## COMPLAINT

Plaintiff, Rafael Cosme, by and through his undersigned counsel, hereby files this Complaint against Defendant City of Hartford and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, Rafael Cosme, is an adult Latino male who is a citizen and resident of Hartford, Connecticut. At all material times Plaintiff was an employee for the Hartford, CT Fire Department.

2. Defendant the City of Hartford ("Hartford" or "the City") is a Connecticut city with its headquarters in Hartford, Connecticut located at 550 Main St., Hartford, CT. At all material times, the City of Hartford was responsible for the assignment and supervision of its employees, and the implementation of policies and procedures of its departments including policies relating to discrimination based upon race, ethnicity, or national origin.

3. Connecticut, where the Defendant operates under the authority of the state of Connecticut and where the Plaintiff works as a firefighter, has the most significant relationship to the dispute and the parties. Connecticut is the state where all the actions alleged herein occurred, including all decisions made by the Defendant.

1

4. The Court retains jurisdiction over the federal law claim under 28 U.S.C § 1331 because this claim involves a federal question—namely, Plaintiff alleges violations of the Equal Protection Clause to the Fourteenth Amendment of the United States Constitution; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

5. The Court retains supplemental jurisdiction over the Connecticut state law claim under 28 U.S.C § 1367 in that the claim is so related to the claim over which the Court retains original jurisdiction such that they form part of the same case or controversy—namely, it alleges violations of the Connecticut State Constitution and the Connecticut Fair Employment Practices Act based on the same behavior and acts as those applicable to the federal claims.

## **BACKGROUND**

6. On March 27, 1998, the Defendant hired the Plaintiff as a firefighter with the Hartford Fire Department.

7. The Defendant City later promoted the Plaintiff to the position of Lieutenant, which is his current title.

8. Plaintiff and other Latino employees were subject to continual instances of harassment and unfair discipline from the Defendant, through its representative, agents, and/or employees, that constitutes a pervasive continuing course of conduct with his employment that materially changed the terms and conditions of his employment.

9. Further, the Defendant was aware of these discriminatory practices towards the Plaintiff and all Latino personnel and did nothing to prevent or remedy these acts, furthering the pervasive atmosphere of discrimination towards Latino employees.

10. Namely, the Defendant's African American supervisors and administration engaged in and continue to engage in discriminatory behavior towards non-African Americans, including the Plaintiff, who is a Latino.

11. These instances of discriminatory behavior include the following:

   a. In 2017, Chief Sheriff—then Capt. Sheriff—ordered Lt. Carter to forge Plaintiff's name on an approval of a Liquor License for an establishment at 2121 Main St, Hartford, CT, without the proper Life Safety corrections that are required to be completed prior to opening and serving of alcohol. Sheriff was never disciplined for this fraudulent activity.

   b. Freeman promoted David Woods, a Caucasian male, even though he knew Woods was retiring a week later.

   c. Raul Ortiz—a Hispanic employee qualified for the Assistant Chief position—was not considered for the position. Captain Rodney Barco, an African American, became the new Assistant Chief, despite Ortiz being the better candidate for the position based on his experience and training.

   d. Defendant's employees passed over Captain Albert Vasquez, a Latino employee, for a promotion, ignoring the fact that he had more education, experience, and training than Barco.

   e. In October of 2018, The Latin Society honored Chief Freeman at an event, but he did not attend the ceremony. In the same month, Chief Sheriff

referred to the Hispanic employees as "The Latin Clique." This incident was documented by Plaintiff in a complaint made to Human Resources on October 10, 2018.

 f. When Plaintiff was acting Captain, along with Lt. Kennedy, he ordered Lt. Quinonez—an African American—to submit documentation showing proof she had Jury Duty in order to excuse her absences. Quinonez failed to submit proof or any such documentation, but there was no reprimand from the Chiefs for her failure to comply with orders or policy.

 g. Lt. Carter, an African American employee, lied in a fire service document regarding her crashing her vehicle into the main entrance gate. Carter claimed that she was not on her phone at the time she ran into the gate, and she tried to have Lt. Gauvreau corroborate her story; however, he refused. Despite her false claims on the report and her attempt to get another to falsely corroborate her story, the Defendant promoted her to Captain.

 h. On October 28, 2019, Plaintiff filed a report against the Defendant for passing over the Plaintiff for the position of Strategic Planning Manager even though he was top of the promotional list. Three other Hispanic employees, Frances Lugo, Vilfrado Santana, and Celestine Jimenez, were also qualified and passed over for consideration of the same position.

 i. Felicia Graves, an African American employee, was on-call but failed to show up to work when called. Chief Barco then ordered Lt. Lopez, a Hispanic employee, to report to work to cover for Graves's absence. Barco knew that it was Lopez's day off and that he was intoxicated at that time, yet Barco

ordered him to appear for work. Graves was not reprimanded for failing to show up to call while on call and no disciplinary actions or investigations took place.

    j.     On September 1, 2020, the respondent skipped over Noel Viesca, a well-qualified Philippine applicant ranked number one on the eligibility list for the Fire Alarm and Control Communications Technician position, in favor of an African American candidate who arrived late for the interview. The entire interview process was delayed until the African American applicant arrived, and he was interviewed first despite other applicants waiting to be interviewed.

    k.     On September 13, 2020, Freeman sent an email to the entire Fire Department in which he discussed accountability/ corrective actions. He stated that "anyone that has come to the 3rd floor and immediately accepted responsibility for their actions has always been met with appreciation and empathy. For those who were dishonest during an investigation, they had a very different outcome." He went on to say regarding the hiring process that "what is in our control is to ensure that everyone is treated fairly." Despite these statements, the Defendant declined to hire Marlon Ballestas—a Latino—whom the Defendant considered untrustworthy after his interview with Freeman, but the Defendant did hire Shane Baptiste—an African American—who was reported during his time as a cadet for giving non-fire department personnel rides in company vehicles. Freeman was aware of Baptiste's prior misconduct and hired him regardless. Baptise has resigned since.

    l.     Lt. Olga Rivera, a Latina employee, was once late to work and was counselled for her tardiness. In contrast, Lt. Carter, an African American,

was always about an hour late to work and never received counseling or a reprimand.

  m. When Sheriff is not on-duty, Capt. Kennedy, an African American, and Capt. Ramos, who identifies as Hispanic, are jointly responsible for taking over his duties including accountability because they are of the same rank in the same division. Sheriff, however, sent an email to the Fire Marshall Office and stated that only Capt. Kennedy would be assuming Sheriff's Statutory Duties and Responsibilities while he was out without providing a justification.

  n. On September 3, 2020, Freeman assigned Kennedy to be the acting Fire Marshall without considering Captain E. Ramos. Freeman yet again showed preference towards another African American and overlooked a Hispanic employee for promotional considerations.

  o. At a separate meeting with Human Resources involving another person's complaint and in response to a question regarding the disparate treatment between African American employees and non-African Americans, Chief Freeman said, "the difference is I am black and [the other employee] is black, good luck with that."

**COUNT I – VIOLATION OF**
**THE FOURTEENTH AMENDMENT OF THE UNITED**
**STATES CONSTITUTION, BROUGHT PURSUANT TO 42 U.S.C. § 1983**

1. Paragraphs One through Eleven of the Parties and Background are hereby repeated and restated as Paragraphs One through Eleven of this Count One as if set forth herein.

12. Defendant City of Hartford is the entity through which Chief Barco, Reilly,

and Freeman as the Chiefs of the Hartford Fire Department receive their staffing and policy enforcement powers.

13. Namely, the Defendant City is the entity through which its employees Chief Barco, Reilly, and Freeman acted and engaged in discriminatory practices that prevented people who identify as Hispanic from being promoted and therefore being fully represented in the workplace and community, as well not allowing them the same privileges as other non-Hispanic employees, and unfairly enforcing the disciplinary policies of Hispanic employees while not enforcing the same standards when non-Hispanic employees engage in the same misconduct.

14. Defendant, therefore, under color of law as a municipality within the State of Connecticut, is liable for the intentional discriminatory conduct enacted through its servants, agents, and/or employees that violates the Fourteenth Amendment of the United States Constitution—namely, it deprives employees of Hispanic descent of the equal protections of the law based on their race: Hispanic.

15. Because of Defendant's intentional constitutional violations identified herein, Plaintiff has incurred damages in the form of mental anguish, embarrassment, stress, inconvenience, anxiety, and other pain and suffering.

16. This action is brought pursuant to 42 U.S.C. § 1983.

## COUNT II – VIOLATION OF ARTICLE FIRST, §§ 1 & 20 OF THE CONNECTICUT CONSTITUTION, BROUGHT PURSUANT TO 42 U.S.C. § 1983

1. Paragraphs One through Thirteen of Count One are hereby repeated and restated as Paragraphs One through Thirteen of this Count Two as if set forth herein.

14. Defendant, therefore, under color of law as a municipality within the State of Connecticut, is liable for the intentional discriminatory conduct enacted through its servants, agents, and/or employees that Article First, §§ 1 and 20 of the Connecticut Constitution—namely, it deprives employees of Hispanic descent of the equal protections of the law based on their race: Hispanic.

15. Because of Defendant's intentional constitutional violations identified herein, Plaintiff has incurred damages in the form of mental anguish, embarrassment, stress, inconvenience, anxiety, and other pain and suffering.

16. This action is brought pursuant to 42 U.S.C. § 1983.

### COUNT III – DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *ET SEQ.*

1. Paragraphs One through Eleven of the Parties and Background are hereby repeated and restated as Paragraphs One through Eleven of this Count One as if set forth herein.

12. Defendant is an entity engaged in the industry of municipal development and management that affects interstate commerce and employs at least fifteen persons.

13. Defendant, through its agents, servants, and/or representatives, engaged in a pattern of pervasive discrimination against Plaintiff such that it altered the terms and conditions of his employment.

14. Namely, Defendant acted through its supervisory personnel to continuously favor African American employees over employees of other races, target and single out Plaintiff because of his race, refuse to investigate his complaints of

8

disparate treatment, and gave preferential treatment to those persons of African descent.

15.   These acts altered Plaintiff's terms and conditions of employment such that Plaintiff was and is unable to effectuate his duties as a Fire Lieutenant.

16.   Defendant's conduct created a hostile work environment for Plaintiff based on his race as a Latino in violation of 42 U.S.C. § 2000e-2.

17.   On February 16, 2021, Plaintiff filed a complaint with the Commission on Human Rights and Opportunities ("CHRO"), which Complaint was also dual filed with the Equal Employment and Opportunities Commission ("EEOC"), alleging, *inter alia*, discrimination premised on race in violation of 42 U.S.C. § 2000e-2.

18.   On July 13, 2021, the CHRO provided a Release of Jurisdiction for Plaintiff's claims, a copy of which is attached hereto.

## COUNT V – DISCRIMINATION UNDER CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. 46a-60(b)(1)

1.   Paragraphs One through Eleven of the Parties and Background are hereby repeated and restated as Paragraphs One through Eleven of this Count Five as if set forth herein.

12.   Defendant is an entity engaged in the industry of municipal development and management that affects interstate commerce and employs at least fifteen persons.

13.   Defendant, through its agents, servants, and/or representatives, engaged in a pattern of pervasive discrimination against Plaintiff such that it altered the terms and conditions of his employment.

14. Namely, Defendant acted through its supervisory personnel to continuously favor African American employees over employees of other races, target and single out Plaintiff because of his race, refuse to investigate his complaints of disparate treatment, and gave preferential treatment to those persons of African descent.

15. Defendant City's conduct created a hostile work environment for Plaintiff based on his race as a Latino in violation of Conn. Gen. Stat. § 46a-60(b)(1).

16. On February 16, 2021, Plaintiff filed a complaint with the CHRO, which Complaint was also dual filed with the EEOC, alleging, *inter alia*, discrimination premised on race in violation of Conn. Gen. Stat. § 46a-60(b)(1).

17. On July 13, 2021, the CHRO provided a Release of Jurisdiction for Plaintiff's claims, a copy of which is attached hereto.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter judgment against the Defendant and order that it pay money damages as compensation for the discriminatory practices in violation of the Fourteenth Amendment of the United States Constitution brought under 28 U.S.C. § 1983; Article First, §§ 1 and 20 of the Connecticut Constitution brought under 28 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2; and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60(b)(1); and enjoin the Defendant from continuing discriminatory practices and further pay reasonable attorneys' fees under 42 U.S.C. § 1988.

Dated: October 11, 2021

                RESPECTFULLY SUBMITTED,
                PLAINTIFF,
                RAFAEL COSME

By _____
Gregory A. Jones (ct30715)
Fazzano & Tomasiewicz, LLC
96 Oak Street
Hartford CT 06106
T: 860-231-7766
F: 860-560-7359
E: gjones@ftlawct.com
*His Attorneys*